UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD SCHROEDER,

                    Plaintiff,

    v.                                       Case No. 23-cv-1245-pp

PHILLIS THOMAS, SARAH MOORE,
WILLIAM DUCKERT, LT. JOSHUA BRIGGS,
DENITA BALL and WILLIAM DAVIDSON,

                    Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. No. 3)**

Plaintiff Ronald Schroeder, who is incarcerated at the Milwaukee County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The plaintiff has paid the filing fee. This order screens his complaint, dkt. no. 1, and denies his motion for preliminary injunction, dkt. no. 3.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

1

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720

(citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

      B.    <u>The Plaintiff's Allegations</u>

      The plaintiff is confined at the Milwaukee County Jail. Dkt. No. 1 at 1.

He has sued CO Phillis Thomas, Captain Sarah Moore, Captain William

Duckert, Commander Joshua Briggs, Sheriff Denita Ball and Attorney William

Davidson in their individual and official capacities. <u>Id.</u> at 1 ¶1. The plaintiff

alleges that since his arrival at the jail as a pretrial detainee in August 2021,

"friends have mailed [him] 100+ sheets of blank stationery and short notes

(e.g., "I love you," "God loves you," etc.) without incident . . . until [he]

complained about nonreceipt of a Bible." <u>Id.</u> at ¶2.

      In July 2022, defendant Thomas allegedly denied the plaintiff a Bible

mailed from Rescued Not Arrested (RNA). <u>Id.</u> at ¶3. He states that the jail has a

"1 publisher policy." <u>Id.</u> In September 2022, Thomas allegedly denied the

plaintiff other Christian material from RNA. <u>Id.</u> The plaintiff states that in

November 2022, he told Thomas that it was unreasonable to have denied the

plaintiff's Bible back in July. <u>Id.</u> at ¶4. "Days later," Thomas allegedly said that

the plaintiff no longer could receive his original mail, only photocopies of his

mail. <u>Id.</u> The plaintiff alleges that he asked why, and Thomas said that people

can no longer send him "station[e]ry." <u>Id.</u> The plaintiff says that he successfully

grieved the matter and resumed receiving his original mail. <u>Id.</u>

      The plaintiff alleges that in December 2022, Thomas stopped giving him

"mailed in station[e]ry (original or copies), deeming it 'contraband.'" <u>Id.</u> at ¶5.

He says the receipts provided no reason for the denial, the senders did not receive notice of the non-delivery and he grieved this on December 13, 2022. Id.

The plaintiff alleges that in January 2023, he grieved Thomas's July 2022 denial of his Bible, and he received it shortly thereafter. Id. at ¶6. He states that days later, defendants Thomas and Moore denied "not only blank 'station[e]ry,' but short notes as well. Id. When the plaintiff asked Thomas why they had been denied, she allegedly said there's "not enough words on them." Id. The plaintiff alleges that his friends complained to defendant Briggs and on March 3, 2023, Briggs said the jail had considered stationery and "like items" contraband for some time. Id. The plaintiff states that in March 2023, the Milwaukee County Sheriff's Office mail policy was amended, and the jail now deems stationery and "blank or nearly blank paper" contraband. Id. The plaintiff and his friends allegedly complained about this amendment and Briggs "rotely [sic] said security and safety are paramount in MCJ." Id. The plaintiff alleges that they unsuccessfully asked Briggs to define those words. Id.

The plaintiff alleges that Thomas opened out of the plaintiff's presence multiple pieces of mail from Attorney Mark Weinberg. Id. at ¶8. Thomas also allegedly denied as contraband "mailed in CCAP printouts" of the plaintiff's cases. Id. at ¶9. The plaintiff states that he filed a grievance and six days later, Thomas said all his incoming mail must go to defendant Captain Moore for review and approval. Id.

4

The plaintiff alleges that defendants Thomas and Moore denied as contraband a "Vote for [Milw. Cnty. Sup.] Ryan Clancy" note mailed to the plaintiff. Id. at ¶10. The plaintiff and his friends allegedly complained to Clancy, who asked Briggs for "the criteria for increased scrutiny or screening [detainee] correspondence." Id. Briggs allegedly responded, "We enforce the mail policy equally no matter which occupant is receiving correspondence." Id. The plaintiff alleges that five days after Supervisor Clancy's email, defendants Thomas and Moore stopped giving the plaintiff his paper mail. Id. at ¶11. They allegedly digitally scanned the mail to the plaintiff's tablet, commingling his mail with the 4000+ "Facility Messages." Id. He says that Thomas continued to give him contraband receipts for all the intercepted/scanned mail. Id.

The plaintiff alleges that Thomas gave him contraband receipts for scripture mailed from SVdP's (Saint Vincent de Paul) St. Dismas Jail Ministry and Pastor Joe Ellwanger. Id. at ¶12. Pastor Joe's wife allegedly emailed defendant Sheriff Ball questioning "the scripture matter" and on July 5, 2023, the president of the SVdP Jail Ministry emailed Sheriff Ball about it. Id. The next day, Thomas and Moore allegedly stopped giving the plaintiff receipts for the intercepted mail, despite jail policy that required them to do so. Id.

The plaintiff alleges that his friend emailed Briggs and Ball objecting to the scanning/storing of mail on Milwaukee County Sheriff's Office servers on Fourth Amendment grounds. Id. at ¶13. She also allegedly sent an open records request seeking all policies related to scanning and storing mail. Id. The records custodian allegedly said that none existed. Id. The plaintiff states,

"To this end, Thomas opened (outside my presence) and scanned mail from a court." Id. at ¶14. The plaintiff says he grieved it, but staff said mail from courts is not "legal mail." Id. The plaintiff alleges that Thomas also scanned/stored incoming mail containing medical information. Id. at ¶15. The plaintiff says he grieved it but staff told him to tell his friends to not mail him medical information potentially protected by HIPAA. Id. The plaintiff alleges that Project RETURN (a jail/prison re-entry organization) mailed him several flyers to distribute but that Thomas and Moore refused to give them to him. Id. at ¶16.

The jail's "1 publisher" mail policy allegedly has adversely affected the plaintiff in other ways. Id. at ¶17. He states that in June 2023, his request to participate in a correspondence paralegal course was denied because "the jail is under no obligation to facilitate your access to outside educational programs." Id.

The plaintiff alleges that complaining about mail "cost [him his] 'pod worker' assignment." Id. at ¶18. He states that he repeatedly grieved the mishandling of his mail and defendant Captain Duckert generally provided "non-response responses[.]" Id. On May 10, 2023, the plaintiff allegedly complained to Briggs and the next day, Duckert orally discharged him as a pod worker after one and a half years with an exemplary work record. Id. The plaintiff states that the reason was his pending charge and high bail. Id. He alleges that a correctional officer reinstated him and several officers said he's the hardest working pod worker in the jail. Id. On June 6, 2023, the plaintiff

6

allegedly asked a friend via the jail's monitored email service to submit several open records requests regarding his mail. Id. He states that the next day, Duckert again orally discharged him from his job. Id. The plaintiff states that he grieved the discharge and asked to be reinstated. Id. at ¶19. An unknown staff member allegedly said he would not be reinstated on grounds that he asked to be reinstated. Id.

The plaintiff alleges that since his challenge to Thomas's denial of his Bible, he has worked hard to resolve the above issues without litigation and instead has reached out to his outside support system. Id. at ¶20. The plaintiff states, however, that on July 18, 2023, defendant Corporation Counsel Davidson said that if he continued to complain about his mail to his advocates, "the County may sue [the plaintiff]." Id. Out of fear of being sued, the plaintiff allegedly stopped asking his friends to help him resolve his mail issues. Id.

The plaintiff alleges that his jail mail log shows that he received "lots of mail" but that up to the date he filed his complaint (September 20, 2023), he has received no mail. Id. at ¶21. He states that this is because several friends said they are no longer writing because of the hassle jail staff have caused and because the plaintiff may not access the scanned mail that is sent in. Id. The plaintiff alleges that when he tries to open the last thirteen pieces of scanned mail, he gets a "corrupt file" error message. Id. He allegedly has repeatedly grieved this but received no response. Id.

The plaintiff alleges that he currently has no access to his incoming mail. Id. at ¶22. Briggs allegedly told Supervisor Clancy and others that the

plaintiff's mail restrictions "are due to policy and apply to all [jail] detainees[,]" but the other sixty-three detainees in his pod are not being subjected to the restrictions. Id.

The plaintiff states that he brings the following fourteen claims:

(1) the jail's prohibition against mailed in "station[e]ry" and "blank or nearly blank paper" is facially and as-applied impermissibly broad and vague;

(2) the jail's "Penguin Only," one publisher policy facially and as-applied violates that First Amendment as to RNA Bible and correspondence course;

(3) defendants Thomas and Moore violated the First and Fourteenth Amendments by disapproving the plaintiff's RNA Bible;

(4) Thomas and Moore retaliated against the plaintiff for complaining about his RNA Bible and their handling of his mail;

(5) Thomas and Moore violated the First and Fourteenth Amendments by disapproving the many sheets of stationery and short notes mailed to the plaintiff;

(6) Thomas and Moore violated the First, Sixth and Fourteenth Amendments by delaying and denying the plaintiff's legal mail;

(7) Thomas and Moore violated the Fourteenth Amendment's Due Process Clause by failing to provide reasons for disapproval of the plaintiff's mail or informing him of his appeal right/procedure;

(8) Thomas and Moore violated the Religious Land Use and Institutionalized Persons Act by disapproving the RNA Bible and scripture mailed from SVdP's [St.] Dismas Ministry and Pastor Joe Ellwanger;

(9) Thomas and Moore violated the plaintiff's right to equal protection by arbitrarily singling him out for more onerous mail treatment than other jail detainees;

(10) Thomas and Moore are violating the First Amendment by currently providing the plaintiff no access to any of his incoming mail;

(11) Duckert retaliated against the plaintiff by discharging him as a pod worker for exercising his right to grieve about the mishandling of his mail;

(12) Duckert violated the plaintiff's equal protection right by arbitrarily discharging him as a pod worker (immediately after grieving his mail issues) and not the other, "disqualified" pod workers;

(13) Briggs and Ball failed to intervene when expressly alerted by citizen advocates; and

(14) Davidson retaliated against the plaintiff by threatening to sue him if he continued to complain about his mail issues to his citizen advocates.

Id. at 16-18.

For relief, the plaintiff seeks declaratory relief, injunctive relief and nominal and punitive damages. Id. at 19-20.

C.      Analysis

Incarcerated individuals have a First Amendment right to send and receive mail. Kaufman v. McCaughtry, 419 F.3d 678, 685-86 (7th Cir. 2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999)). Prison regulations that restrict the right to send and receive mail are valid if they reasonably relate to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89-90 (1987). To determine reasonableness, the court considers whether there is a valid, rational connection between the prison's objective and the regulation; whether alternative means of exercising the right are available; whether accommodating the asserted right unduly impacts the prison's resources; and whether obvious, easy alternatives exist to accommodate the incarcerated person's rights. Id.

9

An incarcerated individual has even greater rights with respect to legal mail. See Guajardo-Palma v. Martinson, 622 F.3d 801 (7th Cir. 2010). The law recognizes stronger protections for legal mail to protect an individual's right of access to the courts and the right to communicate with attorneys. Id. at 803-806. Accordingly, officials may inspect legal mail for contraband, but they must do so in the presence of the incarcerated person. Id. This carefully balanced approach protects the institution's legitimate penological interest in stopping contraband against an incarcerated individual's constitutional rights to access the courts and communicate with counsel. Id.

  1.  *Claims 1, 5 – Stationery Policy; Thomas and Moore's Disapproval of Stationery and Short Notes*

The plaintiff claims that the jail's stationery policy has prevented him from receiving stationery and "blank or nearly blank paper," in violation of his constitutional rights. The jail may have a legitimate reason for this policy. See Gonzalez v. Josephson, Case No. 14-CV-4366, 2019 WL 1013737, at *7 (N.D. Ill. Mar. 4, 2019) (detainees not allowed to receive stationery from family and friends because drugs can be smuggled into the jail in the stationery). At the screening stage, however, the court will not assume that such a policy exists.

Local governing bodies (such as Milwaukee County) and local government officials sued in their official capacities may be liable under 42 U.S.C. §1983 based on an official policy, widespread custom or a deliberate act of a decision-maker. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978); see also Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 378-79 (7th Cir. 2017). The plaintiff may proceed on a Monell claim against

10

defendant Briggs in his official capacity, who in March 2023 allegedly told the plaintiff that the jail considered stationery and "like items" contraband. The plaintiff has not sued Milwaukee County, but a claim against a municipal official in his official capacity represents another way of pleading a claim against the municipality. See Monell, 436 U.S. at 690 n.55.

The plaintiff also alleges that defendants Thomas and Moore disapproved many sheets of stationery and short notes. The plaintiff may proceed on a First Amendment claim against Thomas and Moore in their individual capacities.

2.     *Claims 2, 3 – One-Publisher/Penguin Only Policy and Disapproval of RNA Bible*

The plaintiff alleges that in July 2022, defendant Thomas denied him an RNA Bible based on the jail's one-publisher policy. The plaintiff states that in January 2023, he filed a grievance about not receiving his Bible and that he then did receive it. The plaintiff also alleges that the jail's policy prevented him from participating in a paralegal correspondence course in June 2023. He states that staff told him the jail was not required to facilitate his access to outside educational programs.

At a later stage in the case, the defendants may be able to demonstrate that they have a legitimate penological interest in implementing the one-publisher policy. But at this stage, the plaintiff has alleged sufficient facts to allow him to proceed on a Monell claim against defendant Briggs in his official capacity based on allegations that the jail's one-publisher policy prevented the plaintiff from receiving his Bible (until he filed a grievance about it) and from receiving materials that would have allowed him to participate in a

11

correspondence course. The plaintiff also may proceed on a claim against defendant Thomas in her individual capacity based on allegations that she did not let the plaintiff have the RNA Bible.

3.    *Claim 4 – Retaliation, Thomas and Moore*

The plaintiff claims that defendants Thomas and Moore retaliated against him for complaining about his RNA Bible and their handling of his mail. The plaintiff states that after he filed his grievance about the RNA Bible in January 2023, Thomas and Moore started denying the "short notes" the plaintiff received. The plaintiff also alleges that Thomas opened mail from an attorney outside the plaintiff's presence and denied CCAP printouts; the plaintiff says that after he filed a grievance about Thomas's actions, she said all his mail had to go through Moore. The plaintiff states that Thomas and Moore denied the "Vote for Clancy" note as contraband and subsequently stopped giving the plaintiff his paper mail, stopped giving the plaintiff receipts for intercepted mail and that Thomas opened and scanned the plaintiff's mail from the court outside his presence.

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff has not "plead[] factual content that allows the court to draw the reasonable inference" that the defendants retaliated against him. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a claim for retaliation, he must plausibly allege that his protected activity was a motivating factor behind the defendants' conduct. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). It appears that the plaintiff is interpreting every action taken by the defendants as retaliation for him complaining about his mail. At the same time, he claims that unlawful jail policies have prompted the defendants' actions or that the defendants have offered other explanations for their treatment of his mail. The court cannot determine the basis for the plaintiff's claim. At this point, the court will not allow the plaintiff to proceed on a retaliation claim against these defendants. If he wishes to do so, the plaintiff may file an amended complaint, clarifying whether he is alleging that Thomas and Moore denied him his mail and/or opened mail outside his presence (a) out of retaliation against him for filing a grievance, or (b) due to an unlawful jail policy, or (c) for some other reason.

4.    *Claim 6 – Thomas and Moore Delayed and Denied Legal Mail*

The plaintiff alleges that defendant Thomas opened multiple pieces of mail from an attorney and mail from a court outside the plaintiff's presence. The plaintiff may proceed on a First Amendment claim based on these allegations. The court notes that mail from a court usually is not considered confidential, legal mail because it typically involves matters that are part of the

13

public record. See Guarjardo-Palma v. Martinson, 622 F.3d 801, 804 (7th Cir. 2010).

The plaintiff has not alleged that Thomas's actions interfered with his access to the courts or affected his ability to communicate with his lawyer. Thus, the plaintiff may not proceed on claims under the Sixth or Fourteenth Amendments. See id. at 802-03.

5. *Claim 7 – Thomas and Moore Failed to Provide Reasons for Disapproval of Plaintiff's Mail or Informing him of his Appeal Right/Procedure*

The plaintiff states that Thomas and Moore failed to provide reasons for disapproving his mail or informing him of his appeal rights. These allegations may include conduct involved with the plaintiff's above-described First Amendment claims against Thomas and Moore. This allegation does not appear to allege a separate claim.

6. *Claim 8 – Thomas and Moore Violated RLUIPA by Denying RNA Bible and Scripture from SVdP's St. Dismas Ministry and Pastor Joe Ellwanger*

The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides that a federally funded prison or jail may not "impose a substantial burden on the religious exercise" of an incarcerated individual unless it can prove that doing so "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. §2000cc-1(a). The plaintiff has not alleged that the jail's policies substantially burdened the practice of his religion. Rather, he states that when he complained about the denial of his RNA Bible, he received the Bible. And he has not stated that the denial of the scripture

14

materials substantially burdened the practice of his religion. As a practical matter, the court assumes that the scriptures that were denied are in the Bible and therefore the plaintiff was not deprived of any particular scripture that he wanted to read. In addition, the plaintiff has not alleged that he was unable to practice his religion without the scriptures. See West v. Radtke, 48 F.4th 836, 844-45 (7th Cir. 2022). The plaintiff has not stated a claim under RLUIPA.

7. *Claim 9 – Thomas and Moore violated plaintiff's right to equal protection by arbitrarily singling him out for more onerous mail treatment than other detainees*

This claim appears to be based on the plaintiff's allegation that defendant Briggs told Supervisor Clancy and others that the plaintiff's mail restrictions "are due to policy and apply to all [jail] detainees[,]" but the other sixty-three detainees in his pod are not being subjected to the restrictions. Dkt. No. 1 at ¶22. This allegation is too vague for the court to allow the plaintiff to proceed on an equal protection claim because the court cannot tell what restrictions the plaintiff referencing that apply just to him and who imposed the restrictions. The plaintiff has not stated a plausible equal protection claim.

8. *Claim 10 – Thomas and Moore are violating the First Amendment by currently providing the plaintiff no access to any of his incoming mail*

The plaintiff states that he currently does not have access to his incoming mail because after the mail is scanned to his tablet, he gets a "corrupt file" error message when he tries to access it. This appears to be a technical issue with the equipment. The plaintiff has not alleged that Thomas

and Moore are responsible for these technical issues. The plaintiff may not proceed on a First Amendment claim against them based on these allegations.

9.  *Claims 11, 12 – Duckert, Retaliation and Equal Protection*

The plaintiff states that defendant Duckert retaliated against him by discharging him as a pod worker because the plaintiff exercised his right to grieve about the mishandling of his mail. The plaintiff also states that Duckert violated his right to equal protection by arbitrarily discharging him as a pod worker after the plaintiff grieved his mail issues while not discharging the other, "disqualified" pod workers. The plaintiff states that he repeatedly complained to Duckert about his mail and that Duckert gave him "non-responses," but then when the plaintiff complained to Briggs, Duckert orally discharged him from his job. The plaintiff states that Duckert reinstated him but that he subsequently discharged the plaintiff a second time after the plaintiff's friend submitted an open records request (the plaintiff does not say to whom this request was made).

The plaintiff has not stated a plausible claim against Duckert for retaliation. The plaintiff concedes that Duckert reinstated him after his first termination. While the plaintiff alleges that the second termination occurred after his friend submitted an open records request, he does not allege that Duckert knew about that request or that the request was made to Duckert. The plaintiff may not proceed on an equal protection claim against Duckert because it is not related to his other claims in this case. See Fed. R. Civ. P. 18, 20.

10. *Claim 13 – Briggs and Ball, Failure to Intervene*

The plaintiff states that defendants Briggs and Ball failed to intervene in the violation of the plaintiff's rights after "citizen advocates" alerted them to the violations. This claim appears to be based on the plaintiff's allegation that his friends emailed Briggs and Ball and objected to the scanning/storing of the plaintiff's mail. But administrators ordinarily are not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene. See Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009). Moreover, the plaintiff is not proceeding on a separate claim based on the scanning and storing of his mail. The plaintiff has not stated a claim for relief against Briggs and Ball based on these allegations.

11. *Claim 14 – Davidson Retaliation*

The plaintiff claims that Assistant Corporation Counsel Davidson retaliated against him by threatening that the county might sue him if he continued to complain about his mail issue to his citizen advocates. The plaintiff states that in a letter dated July 18, 2023, Davidson said that if the plaintiff continued to complain about his mail to his advocates, the county might sue him. Without more information about these allegations, the court will not allow the plaintiff to proceed on a retaliation claim. The plaintiff has not stated a plausible claim that defendant Davidson had a retaliatory motive for writing his letter.

12. *Summary*

The plaintiff may proceed a <u>Monell</u> claim against defendant Briggs in his official capacity based on allegations that the jail's stationery policy has prevented him from receiving stationery and short notes in the mail. The plaintiff may also proceed on a claim against defendants Thomas and Moore for allegedly disapproving stationery and short notes under the policy.

The plaintiff may proceed on a <u>Monell</u> claim against defendant Briggs in his official capacity based on allegations that the jail's one-publisher policy prevented him from receiving an RNA Bible and from receiving materials that would have allowed him to participate in a correspondence course. The plaintiff may also proceed against defendant Moore in her individual capacity for allegedly not letting the plaintiff have his RNA Bible.

The plaintiff may proceed on a First Amendment claim against defendant Thomas in her individual capacity based on allegations that she opened legal mail (multiple pieces of mail from an attorney and mail from a court) outside the plaintiff's presence.

The plaintiff has not stated any other plausible claims for relief. The court will dismiss defendants Duckert, Ball and Davidson because the plaintiff has not stated a claim against them.

## II. Motion for Preliminary Injunction (Dkt. No. 3)

The plaintiff has filed a motion for preliminary injunction in which he states that he currently is not receiving any of his mail. Dkt. No. 3. The plaintiff

asks the court to order the defendants to allow him to timely access his mail from the court related to his case.

The court will deny without prejudice the plaintiff's motion for preliminary injunction. The court will order that, within ten days after they file a responsive pleading to the complaint, the defendants must ensure that the plaintiff has access to his mail related to this case and must confirm that fact with the court.

### III.     Conclusion

The court **ORDERS** that defendants Duckert, Ball and Davidson are **DISMISSED**.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for preliminary injunction. Dkt. No. 3. The court **ORDERS** that within ten days after the defendants file responsive pleading to the complaint, the defendants must ensure that the plaintiff has access to his mail related to this case and must confirm that fact in writing with the court.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service on defendants Phillis Thomas, Sarah Moore and Lt. Joshua Briggs. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court will send a copy of this order to Office of the Sheriff, Fiscal Operations Rm 224, 821 W State Street, Milwaukee, WI 53233.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 26th day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21